■ ALOIS J. BONTEMPS et al., Respondents, v BANK OF BABYLON, Appellant. (Action No. 1.) GLORIA PIROZZI et al., Respondents, v BANK OF BABYLON, Appellant. (Action No. 2.) — In two actions to recover possession of automobiles and for the damages, defendant in both actions appeals (1) from two orders of the Supreme Court, Nassau County (McCaffrey, J.), both dated August 16, 1982 (one as to each action), which, *inter alia*, granted the respective motions of the plaintiffs for partial summary judgment in their favor on the issue of liability and denied defendant's cross motions for similar relief, and (2) as limited by its brief, from so much of an order of the same court, dated December 22, 1982, as, upon renewal, adhered to the original determinations. Appeals from the orders dated August 16, 1982, dismissed, without costs or disbursements. Said orders were superseded by the order dated December 22, 1982 made upon renewal. Order dated December 22, 1982 modified by vacating so much of the orders dated August 16, 1982 as granted plaintiffs' motions and substituting therefor provisions denying said motions. As so modified, order dated December 22, 1982 affirmed insofar as appealed from, without costs or disbursements. It is undisputed that Country-Wide Leasing Corporation (hereinafter Country-Wide) has been licensed as a dealer to engage in the business of buying, selling, or dealing in motor vehicles since 1976. The premises from which Country-Wide operated and the general appearance of the business gave the impression of a dealer engaged in the sale and leasing of automobiles. Country-Wide held itself out to the public as an automobile dealer, selling and leasing automobiles, as evidenced by signs on its premises which stated that cars were available for sale and lease. As part of

a continuing business relationship, defendant Bank of Babylon (hereinafter the Bank) loaned in excess of $100,000 to Country-Wide. Part of the moneys loaned to Country-Wide were used to finance its purchase of the automobiles which are the subject of this replevin action. In return for these funds, Country-Wide signed a security agreement which gave the Bank a first lien on each motor vehicle. The Bank's security interest also covered all other indebtedness and obligations of Country-Wide to the Bank. The security interest in the subject vehicles was duly perfected by the Bank in accordance with sections 2118 and 2119 of the Vehicle and Traffic Law. Thereafter, Country-Wide leased the subject vehicles to corporate customers and upon the termination of the respective leases, it sold one vehicle to the plaintiffs Bontemps and the other to the plaintiffs Pirozzi. Subsequent to the sales, Country-Wide defaulted on its obligations to the Bank and it thereupon seized the subject automobiles from plaintiffs, in order to satisfy its lien. Plaintiffs then commenced separate replevin actions against the Bank, additionally seeking damages for the wrongful taking of the automobiles. By orders dated August 16, 1982, Special Term granted the motions of the respective plaintiffs for, *inter alia,* partial summary judgment in each action, finding as a matter of law that each plaintiff qualified as a buyer in the ordinary course of business, as that term is defined by subdivision (9) of section 1-201 of the Uniform Commercial Code, and, therefore, purchased free of the Bank's validly perfected security interest in the automobiles, pursuant to section 9-307 thereof. The law is clear that "[a] buyer in ordinary course of business * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence" (Uniform Commercial Code, § 9-307, subd [1]). In order to qualify as a buyer in the ordinary course of business, one must (a) act "in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods" and (b) buy "in ordinary course from a person in the business of selling goods of that kind" (Uniform Commercial Code, § 1-201, subd [9]). Based on this record, Special Term erred in finding, as a matter of law, that plaintiffs qualified as buyers in the ordinary course of business. A triable issue of fact exists as to whether Country-Wide was "in the business of selling goods of that kind", i.e., automobiles, which precludes the granting of summary judgment. Initially, we note that *Hempstead Bank v Andy's Car Rental System* (35 AD2d 35) is not dispositive of this appeal. This court's holding in *Hempstead Bank,* that the selling of used rental cars was not in the ordinary course of business for an auto rental company, was predicated upon the fact the used cars were not the inventory of a sales business, but rather were the capital inventory of a leasing company, which is usually subject to extended term financing. However, *Hempstead Bank* was decided prior to the enactment of subdivision (c) of section 2103 of the Vehicle and Traffic Law, which provides in relevant part that "a buyer in ordinary course of business from * * * a dealer [as defined in section 415 (subd 1, par a) and subdivision (a) of section 2101 of the Vehicle and Traffic Law] who holds the vehicle for sale, whether or not he may have held it for lease, takes free of any security interest created by him in the vehicle". Unlike the automobile leasing and rental company in *Hempstead Bank,* Country-Wide is licensed as a dealer to engage in the sale of automobiles, pursuant to section 415 of the Vehicle and Traffic Law. Consequently, the fact the vehicles in question were leased prior to being sold would not bar a finding that Country-Wide was in the business of selling automobiles. Although sales of vehicles which Country-Wide had previously leased to customers may be relatively infrequent and only incidental to Country-Wide's predominant business purpose — the leasing of automobiles — such sales, contrary to the defendant bank's contention, may still be part of the

ordinary course of Country-Wide's business (see *Tanbro Fabrics Corp. v Deering Milliken,* 39 NY2d 632). "All subdivision (1) of section 9-307 [of the Uniform Commercial Code] requires is that the sale be of the variety reasonably to be expected in the regular course of an on-going business" (*Tanbro Fabrics v Deering Milliken, supra,* p 637). In the instant case, it cannot be determined as a matter of law whether the sales at issue meet this test. On its motion to renew, defendant Bank proffered newly discovered evidence that Country-Wide was not in the business of selling automobiles because Country-Wide did not sell the subject vehicles in its capacity as a dealer of automobiles but in its capacity as an owner. The newly discovered evidence consisted of an admission by Country-Wide's president, made during a hearing conducted to assess plaintiffs' damages after the orders were signed granting plaintiffs' respective motions for partial summary judgment, and Country-Wide's nonuse of a dealer's transfer of registration form (MV-50, certificate of sale), in accordance with section 2114 of the Vehicle and Traffic Law and 15 NYCRR 20.5 (a). We note further that another triable issue of fact exists as to whether the plaintiffs Pirozzi bought their car without knowledge that the sale was in violation of the security interest of defendant Bank of Babylon. Bracken, J. P., Brown, Rubin and Boyers, JJ., concur.